IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LAVONNE E. SPEARS, individually, | ) | CV NO. 5:13-CV-47-DAE |
| and as representative of the Estate of | ) | |
| BILLY K. SPEARS, deceased, DAVID | ) | |
| J. SPEARS, and BRIAN K. SPEARS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER: (1) DENYING DEFENDANT'S MOTION TO STRIKE
RAYMOND F. TOPP, M.D., AS PLAINTIFFS' EXPERT; (2) GRANTING
IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT</u>

On January 6, 2014, the Court heard argument on Plaintiffs' Partial

Motion for Summary Judgment ("MPSJ," Dkt. # 15) and Defendant's Motion to

Strike Raymond F. Topp, M.D., as Plaintiffs' expert (Dkt. # 20).  Jeffrey C.

Anderson, Esq., appeared on behalf of Plaintiffs; James F. Gilligan, Esq., appeared

on behalf of Defendant United States.  For the reasons that follow, the Court

**DENIES** Defendant's Motion to Strike and **GRANTS IN PART AND DENIES**

**IN PART** Plaintiffs' Motion for Partial Summary Judgment.

1

BACKGROUND

On December 6, 2011, Billy K. Spears, an eighty-one-year-old man, underwent elective spinal surgery at the San Antonio Military Medical Center. ("Compl.," Dkt. # 1 ¶ 8.)  During surgery doctors discovered a dural tear at the L1 left nerve root, which required additional attention and repairs.  (Id.)  At the end of surgery, Spears experienced hemodynamic instability, which was successfully treated with administration of blood or blood products.  (Id.)  He was then transferred to the Intensive Care Unit and placed on a ventilator.  (Id.)  Two days later, he was extubated.  (Id.)  On December 10, 2011, he experienced hypotension and tachycardia.  (Id.)

On December 13, he was reintubated as a result of his partial respiratory failure.  (Id.)  Doctors performed a bronchoscopy and removed a gelatinous foreign body, thought to be a pill, in his right segmental bronchus.  (Id.)  During the retrieval, Spears became hemodynamically unstable and required resuscitation interventions.  (Id.)  At approximately 5:30 p.m., Dr. Markov, a surgery resident, verbally directed Michelle K. Head, a registered nurse, to administer 5mg of Phenylephrine Hydrochloride IV[1] to Spears.  (Id.)

---

[1] Plaintiffs also refer to Phenylephrine Hydrochloride as "neosynephrine."  (See Dkt. # 15-1 at 2.)

Twenty minutes later, Spears suffered a cardio-pulmonary arrest.  (Id.)
Doctors administered Advanced Cardiovascular Life Support ("ACLS")
medications.  (Id.)  Spears was pronounced dead at approximately 6:36 p.m.  (Id.)

On January 17, 2013, Plaintiffs Lavonne E. Spears, individually and
as representative of the Estate of Billy K. Spears, David J. Spears, and Brian K.
Spears (collectively, "Plaintiffs") brought the instant wrongful death action under
the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), alleging medical
malpractice by the United States, acting by and through its agents, servants, and/or
employees (collectively referred to as "Defendant") at Brooke Army Medical
Center.  (Id. ¶¶ 8–15.)  Plaintiffs' Complaint alleges that Defendant negligently
provided treatment to Spears during the following acts:

A.  Administering 5mg of Phenylephrine IV, which was ten times the
appropriate dosage for the administration of that drug resulting in
cardio-pulmonary arrest;

B.  Administering oral medication to a patient with a Parkinsonism
like swallowing disorder, whom the healthcare providers knew or
should have known was at a high risk of aspiration of such foreign
bodies as a result of an abnormal swallowing disorder;

C.  Performing elective spinal surgery on a patient known to have
multiple underlying co-morbid conditions rendering him high risk
for operative and post-operative complications, and

D.  Failing to act as physicians and healthcare providers of ordinary
prudence would have acted under the same or similar
circumstances

(Id. ¶ 10.)  Plaintiffs seek damages on their own behalf for pecuniary loss, loss of companionship, mental anguish, loss of income and inheritance, medical and funeral expenses, and on behalf of the Estate of Billy K. Spears for Spears's physical pain and mental anguish between the time of his surgery and his death. (Id. ¶¶ 12–13.)

On May 30, 2013, Plaintiffs filed the Motion for Partial Summary Judgment that is currently before the Court.  (MPSJ)  On July 2, 2013, Defendant filed a Response to Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 18), and on that same day, Plaintiffs filed a Reply in further support of their Motion for Partial Summary Judgment (Dkt. # 19).

On July 3, 2013, Defendant filed a Motion to Strike Raymond F. Topp, M.D., as Plaintiffs' Testifying Expert, or alternatively, to Strike all Topp's Expert Opinions Regarding Standard of Care, Proximate Cause, and Damages in Plaintiffs' Motion for Partial Summary Judgment and to Prohibit All Anticipated Future Testimony at Future Deposition or Trial.  (Dkt. # 20.)  Defendant asserts that Topp's testimony must be stricken because 32 C.F.R. § 516.49 and Army Regulation 27-40 ¶ 7-10 preclude a former Army physician's expert testimony against the Government.

## LEGAL STANDARD

Summary judgment is proper under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012). The main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. Id. at 323. If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial. ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012). In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

DISCUSSION

Plaintiffs' Motion seeks summary judgment on their medical negligence claim against Defendant United States of America.  According to Plaintiffs, there is no genuine dispute of material fact that Defendant had a duty to act according to a certain standard of care, that Defendant breached that standard of care, and that Spears was injured as a result of Defendant's breach.  (MPSJ ¶ 5.)  In response, Defendant does not deny that it owed Spears a certain standard of care or that Spears was injured.  (Dkt. # 18 at 8.)  Defendant concedes that the 5mg "overdose" of Phenylephrine breached the requisite standard of care owed to Spears.  (Id.; Dkt. # 18, Ex. A.)  However, Defendant maintains that there is a genuine issue of material fact as to whether the overdose caused Spears's death. (Dkt. # 18 at 8.)

As part of its response to Plaintiffs' Motion, Defendant moved to strike the expert report filed by Raymond F. Topp, M.D., submitted by Plaintiffs in support of their Motion.  (Dkt. # 20.)  The Court will address this preliminary matter before moving on to the substance of Plaintiffs' Motion.

I.     <u>Defendant's Motion to Strike</u>

Plaintiffs seek to utilize the expert report furnished by Dr. Raymond F. Topp to demonstrate that Defendant breached the requisite standard of care and that this breach caused Spears's death.  (MPSJ at 4–5.)  Spears was an orthopedic patient of Dr. Topp.  (Dkt. # 15-1 at 19.)  When Spears was experiencing severe back and lower extremity pain, Dr. Topp recommended surgical correction of his spinal stenosis, degenerative scoliosis, and radiculopathy.  (<u>Id.</u> at 20.)  On December 6, 2011, Dr. Topp performed a laterally based lumbar spine fusion.  (<u>Id.</u>)  According to Dr. Topp, Spears's surgery was "uneventful"; Spears did not suffer intraoperative hypotension or experience any other complications.  (<u>Id.</u>)  In his letter to Plaintiffs, Dr. Topp stated:

> Over the next week until his death on the 14th of December 2011, Mr. Spears's condition seemed to improve at times but did require some medical interventions throughout his stay in the surgical intensive care unit.  Periodically, Mr. Spears's blood pressure would drop and this would recover with the use of fluid administration and intermittent chemical assistance.  During one of these resuscitative efforts, as you know, Mr. Spears was given an inappropriate dose of medication to increase his blood pressure and this was followed by the administration of another medication to bring his blood pressure down.  As it has been explained to me by the Intensivist working at the San Antonio Military Medical Center at the time, this rapid rise in his blood pressure followed by the rapid fall in his blood pressure within the few minutes led to his death.

(<u>Id.</u>)

7

Dr. Topp then explained that during his eight years as an orthopaedic surgeon and five years performing spinal surgery, Spears was the only patient to die.  (Id.)  Dr. Topp affirmed that although Spears was elderly and had some medical comorbidities, his case was very similar to many other cases where Dr. Topp performed posteriorly based lumbar spine fusion.  Dr. Topp opined:

> Because the medical teams involved worked diligently to try to avoid the complications of these surgeries, I find it reasonable to conclude that these surgeries can be performed in this age group safely and effectively.  I can also reasonably say that ha[d] a medication error not occurred, Mr. Spears would be alive today.  I base this assertion on the fact that Mr. Spears had comorbidities very similar to anyone in this age group and these comorbidities were being managed very effectively by the primary care teams throughout the military medical system and the veterans administration.

(Id.)

Defendant argues that this Court should strike Dr. Raymond F. Topp as Plaintiffs' testifying expert, and thus strike Dr. Topp's expert report that Plaintiffs filed in support of their Motion for Partial Summary Judgment for two reasons: (1) because his report violates Army Regulations and (2) because he was designated as a non-retained testifying expert.  The Court will address each argument in turn.

8

1.    <u>Army Regulations</u>

According to Defendant, Dr. Topp's testimony violates 32 C.F.R.

§ 516.49(a) and Army Reg. 27-40 ¶ 7-10(a), which both provide, in relevant part:

> Former DA [Department of Army] personnel will not provide, with or without compensation, opinion or expert testimony concerning official information, subjects, or activities either in private litigation or in litigation in which the United States has an interest for a party other than the United States.

(Dkt. # 20 at 4–5 (quoting 32 C.F.R. § 516.49(a); Army Reg. 27-40 ¶ 7-10(a)).)

Defendant asserts that Dr. Topp can only testify concerning the medical care he

provided to Spears under an exception provided by Army Regulation 27-40

¶ 7-10(c), which states:

> <u>Exception for AMEDD personnel</u>.  Members of the Army medical department or other qualified specialists may testify in private litigation with the following limitations:
> 1.  The litigation involves patients they have treated, investigations they have made, laboratory tests they have conducted, or other actions they have taken in the course of their duties.
> 2.  They limit their testimony to factual matters such as the following: their observations of the patient or other operative facts; the treatment prescribed or other corrective action taken; course of recovery or steps required for repair of damage suffered; and contemplated future treatment.
> 3.  Their testimony may not extend to expert or opinion testimony, to hypothetical questions, or to a prognosis.

(<u>Id.</u> (quoting Army Reg. 27-40 ¶ 7-10(c))  In response, Plaintiffs argue that

Defendant fails to cite authority holding that a court's power and authority to

9

determine the admissibility of expert evidence is limited by a military or

federal regulation.  (See Dkt. # 21 ¶ 3.)

Despite neither party citing any case law on the subject, the Court has

uncovered several cases dealing with the aforementioned regulations.  Each case

holds that a court's power to govern the admissibility of expert witnesses cannot be

circumscribed by regulation.

First, in Gulf Group General Enterprises Co. W.L.L. v. United States,

98 Fed. Cl. 639 (2011), the court provided three reasons why an expert's testimony

and reports were not barred by Army regulations.  The court first reasoned that the

regulations were not intended to confer a privilege.  The statutory basis for such

regulations derived from 5 U.S.C. § 301, which provided that an agency "may

prescribe regulations for . . . the conduct of its employees, the distribution and

performance of its business, and the custody, use, and prevention of its records,

papers, and property," but that "[t]his section does not authorize withholding

information from the public or limiting the availability of records to the public."

Id. at 644 (citing Comm. For Nuclear Responsibility v. Seaborg, 463 F.2d 788, 793

(D.C. Cir. 1971) (holding that 5 U.S.C. § 301 is a "housekeeping provision,"

"which authorized each department to issue regulations with respect to custody of

its papers. This statute does permit [the] centralization of responsibility in a

department [on] whether to claim a privilege")).

10

Second, the court found that such regulations "are in direct conflict with the authority of the judicial branch to control the admission of testimony for cases filed in federal court in order to achieve a just and fair result." Id. at 646. Mindful of the separation-of-powers doctrine, the court held that "the judiciary, not the executive branch[,] controls the admission of evidence at trial." Id. at 647.

Third, the court held that the Army regulations, which had been the result of the Supreme Court's opinion in United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951), were only applicable in cases in which the United States was not a party to the original legal proceeding. Id. at 646. That is precisely because the "Touhy regulations," like the Army Regulations in the instant case, "[gave] Justice Department employees the authority, when so ordered by superiors, to refuse to comply with a subpoena ordering disclosure of a confidential file when the United States [was] not a party to the legal action." Id. (quoting State of La. v. Sparks, 978 F.2d 226, 234 (5th Cir. 1992)). "In cases originating in federal court in which the federal government is a party to the underlying litigation, the Touhy problem simply does not arise." Id. (quoting Alexander v. FBI, 186 F.R.D. 66, 70 (D.D.C. 1998)). "When the government or one of its agencies comes into court (with very few exceptions), it is to be treated in exactly the same way as any other litigant. Appointment to office does not confer upon a bureaucrat the right to decide the rules of the game applicable to his crusades or his lawsuits." Id. at 646–47

11

(quoting <u>EEOC v. Los Alamos Constructors, Inc.</u>, 382 F. Supp. 1373, 1375

(D.N.M. 1974)).

       In two other cases, courts have held that the Army Regulations were

superseded by the Federal Rules of Civil Procedure and the Federal Rules of

Evidence.  In <u>Resource Investments, Inc. v. United States</u>, the court held that

"absent clear congressional intent to the contrary, no federal regulation may

contravene or otherwise impede the operation of the Federal Rules. . . ." 93 Fed.

Cl. 373, 379 (2010).  Because the "Federal Rules of Civil Procedure ('FRCP') and

the Federal Rules of Evidence ('FRE') are as binding as any statute duly enacted

by Congress, all laws in conflict with such rules shall be of no further force or

effect after such rules have taken effect."  <u>Id.</u> (internal citation and quotation marks

omitted).  Given that the Army Regulation purported to dictate whose expert

testimony the court may hear and are thus in conflict with the Federal Rules, the

Federal Rules superseded the Army Regulation.  <u>Id.</u>  Likewise, the court in

<u>Romero v. United States</u> agreed that once an expert witness is called, "then the

Federal Rules of Evidence control his testimony, not administrative regulations

promulgated by the Department of the Army."  153 F.R.D. 649, 652 (D. Colo.

1994) (citing Fed. R. Evid. 702, 703).  Because the Federal Rules of Evidence have

been approved by Congress, the Federal Rules of Evidence override Department of

Army regulations to the contrary, and thus expert witness testimony from former Army personnel is not barred by Army Regulations.  Id.

At the hearing, Defendant argued that Young v. United States, 181 F.R.D. 344 (W.D. Tex. 1997) had held that the Army Regulations precluded Dr. Topp from testifying to anything other than the treatment he provided to Spears. However, Young actually stands for quite the opposite.  In Young, a medical malpractice suit, the plaintiffs sought to designate Mr. Young's treating physicians from the Department of Navy as both fact and expert witnesses.  181 F.R.D. at 346.  The defendant objected and argued that the Code of Federal Regulations prohibited such a designation and during a deposition of these witnesses, the defendant instructed them not to answer certain questions.  Id.  The plaintiffs then moved to compel answers to those questions.  Id.

Young primarily addressed whether private litigants could compel a treating physician to act as an expert.  Id.  The court concluded: "In the absence of a statute to the contrary, a professional witness may not generally be compelled to testify as an expert at the request of a private litigant . . . ."  Id.  The court then explained that unless the Navy physicians agreed (through contract or bargain) to provide expert testimony, the plaintiffs could only treat the physicians as fact witnesses, and as such, their testimony would be limited to their treatment of Mr. Young.  Id. at 346–47.

13

The <u>Young</u> court then turned to the defendant's argument that 5 C.F.R. § 2635.805, which restricted federal employees from serving as expert witnesses unless authorized by the agency, prohibited the Navy physicians' testimony. <u>Id.</u> at 347. The court noted that "[the defendant's] purported privilege has been rejected by several courts." <u>Id.</u> (citing <u>Dean v. Veterans Admin.</u>, 151 F.R.D. 83, 86–87 (N.D. Ohio 1993); <u>In re Air Crash Disaster at Detroit Metro Airport</u>, 737 F. Supp. 399, 404 (E.D. Mich. 1989); <u>McElya v. Sterling Med., Inc.</u>, 129 F.R.D. 510 (W.D. Tenn. 1990)). These courts correctly rejected the privilege argument because accepting it "would be tantamount to improperly abdicating control over civil discovery to the caprice of executive officers." <u>Id.</u> In any event, the history of 5 C.F.R. § 2635.805 revealed that the regulation was not designed to create an evidentiary privilege, but was rather designed to guide federal employees in their behavior. <u>Id.</u> The court concluded that "the Code of Federal Regulations probably does not provide a privilege to the Defendant sufficient to stop one of its employees from testifying as an expert witness." <u>Id.</u>

Given the decisions in <u>Gulf Group</u>, <u>Resource Investments</u>, <u>Romero</u>, and <u>Young</u>, this Court finds that neither 32 C.F.R. § 516.49 nor Army Regulation 27-40 ¶ 7-10 prohibit Dr. Topp's testimony.

2.     Non-Retained Status

At the hearing and in supplemental briefing ordered by the Court,

Defendant argued that Dr. Topp's designation as a non-retained expert precludes

Dr. Topp from offering an expert opinion and limits his testimony to his treatment

of Spears.  (See Dkt. # 29 at 3–4.)[2]  Plaintiffs designated Dr. Topp as a "non-

retained testifying expert."  (Dkt. # 14 at 2.)  At the hearing, Plaintiffs averred that

they designated Dr. Topp as such because he wished to provide expert testimony

without compensation.

Defendant first argues that because Dr. Topp acquired information

solely because he was Spears's treating physician, Dr. Topp may only testify as an

"ordinary fact witness" and not an expert.  (Dkt. # 29 at 3–4.)  Defendant

misunderstands the Federal Rules of Civil Procedure governing expert testimony.

A treating physician is not limited to testifying solely about the

treatment he or she provided.  It is well-settled that treating physicians can provide

---

[2] Plaintiffs averred that they "no longer intend to offer an expert opinion from Dr. Topp on the standard of care."  (Dkt. # 28 at 2.)  Instead, Plaintiffs intend to use Dr. Topp's testimony for the medical care he provided, causation, and future medical care.  (Id.)  Defendant responded, "the United States will stipulate that if Dr. Topp restricts his testimony to only what he contemporaneously wrote in the medical chart of his patient's diagnosis, treatment, and medical care exclusively and concedes he is an ordinary fact witness, then the United States will drop its motion to strike."  (Dkt. # 29-1 at 3.)  Because it appears that the parties do not agree as to whether Dr. Topp can testify to causation, the Court will address the merits of Defendant's non-retained expert arguments.

expert opinions aside from opinions related to their treatment as long as they comply with the written-report requirement of Federal Rule of Civil Procedure 26(a)(2)(B).[3] See, e.g., Meyers v. Nat'l R.R. Passenger Corp., 619 F.3d 729, 734–35 (7th Cir. 2010) (holding that a treating physician who has offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, is required to submit an expert report under Rule 26(a)(2)); Kim v. Time Ins. Co., 267 F.R.D. 499, 502 (N.D. Tex. 2008) ("[W]here a treating physician has prepared his opinions in anticipation of litigation or relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like a retained expert and must comply with [the report requirement of] Rule 26(a)(2)(B)."); Lowery v. Spa Crafters, Inc., No. Civ.A.SA03CA0073-XR, 2004 WL 1824380, at *2 (W.D. Tex. Aug. 16, 2004)

---

[3] If a treating physician limits his testimony to the facts and circumstances developed during the care of the patient, then an expert report is not required. See Fed. R. Civ. P. 26(a), cmt. 1993 Amendments, subdivision (a), para. (2) ("The requirement of a written report in paragraph (2)(B) . . . applies only to those experts who are retained or specially employed to provide such testimony . . . . A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report."); Fielden v. CSX Trans. Inc., 482 F.3d 866 (6th Cir. 2007) ("A report is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including the treatment."); see also Lowery v. Spa Crafters, Inc., No. Civ.A.SA03CA0073-XR, 2004 WL 1824380, at *2 (W.D. Tex. Aug. 16, 2004) ("While a treating physician may be called to testify at trial without the requirement of a written report, this testimonial exception is limited to facts and circumstances developed during the care of the patient.").

("[W]hen a physician's proposed opinion testimony extends beyond that care of treatment, and the physician's specific opinion testimony is developed in anticipation of trial, the treating physician becomes an expert from whom an expert report [under Rule 26(a)(2)(B)] is required."); Martin v. Geico Gen. Ins. Co., Civil Action No. 3-01CV0572-BC, 2002 WL 34370891, at *1 (N.D. Tex. Apr. 15, 2002) (holding that where proffered expert testimony extended beyond scope of doctors' "personal knowledge as treating physicians," doctors must fully comply with Rule 26(a)(2))). Thus, a treating physician is not limited to testifying about the treatment he or she provided solely because he or she provided treatment.

Defendant next contends that "Young states emphatically, '[A]s applied to the medical profession, these discovery rules mean that a treating physician generally must be considered an ordinary fact witness, and should not be considered an expert unless the physician has been specifically retained to develop an expert opinion." (Dkt. # 29 at 4.) Defendant argues that because Dr. Topp volunteered his testimony, he has not be "specifically retained" to develop an expert opinion. (Id.)

Defendant's reliance on Young is misplaced. Defendant cites to a particular portion of Young, wherein the Court stated:

> Thus, in the present case, the Plaintiffs have wrongly designated treating physicians as experts. These witnesses acquired knowledge of this case by direct observation, not later consultation. They have not been specifically retained to develop expert opinions, as neither

17

the Plaintiffs nor the Defendant has paid them to become experts for
purposes of this litigation.

Young, 181 F.R.D. at 346.  However, the court in Young was clarifying why
private litigants could not compel a treating physician to act as an expert.  The
court explained that "a professional witness may not generally be compelled to
testify as an expert at the request of a private litigant, as such testimony is a matter
of contract or bargain."  Id.  "In other words," the court stated, "just because a
party wants to make a person work as an expert does not mean that, absent the
consent of the person in question, the party generally can do so."  Id.  Young did
not require that an expert be paid before he or she can furnish an expert opinion.

It is irrelevant for purposes of Rule 26 whether an expert has been
compensated for his or her testimony or simply volunteers that testimony.  Nothing
in the Federal Rules prohibits an expert from formulating opinions simply because
the expert elected to do so on a voluntary basis.  As one court aptly explained:
"Even if the witnesses are 'volunteers' rather than paid experts, they have been
retained by Garrett to provide expert testimony, and she obliged to comply with
Rule 26."  J.A. ex rel. Abelove v. Seminole Cnty. Sch. Bd., 6:05 CV 975-ORL-31,
2006 WL 2927560, at *2 n.1 (M.D. Fla. Oct. 12, 2006) (emphases added).  The
only reason to exclude an expert's opinion testimony is if the party utilizing the
expert fails to furnish or supplement a "retained" or "specially employed" expert's
report as required by Rule 26(a)(2)(B) and Rule 26(e).  See Fed. R. Civ. P. 37(c)

18

("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").[4]

In sum, the Rules of Civil Procedure do not contemplate prohibiting an expert's testimony because that particular expert was a party's treating physician and the expert wishes to volunteer additional expert testimony.  As such, the Court will not strike Dr. Topp's testimony for those reasons.  Accordingly, Defendant's Motion to Strike is **DENIED** so long as Dr. Topp has complied with the request of Rule 26 as required of all retained experts.

---

[4] However, because Dr. Topp "prepared his opinions in anticipation of litigation or relies on sources other than those utilized in treatment," Kim, 267 F.R.D. at 502, and was therefore "retained" or "specially employed" within the meaning of Rule 26(a)(2)(B), Plaintiff's expert disclosures for Dr. Topp must abide by Rule 26(a)(2)(B).  See Meyers, 619 F.3d 729, 734 (7th Cir. 2010) ("[A] treating physician who testifies as to causation is often going beyond what was observed during treatment and therefore the professional shall follow Rule 26(a)(2)(B) and serve an expert report complying with that Rule." (internal quotation marks and citations omitted)); accord Fielden v. CSX Trans. Inc., 482 F.3d 866, 869 (6th Cir. 2007) ("Rule 26(a)(2)(B) by its terms provides that a party needs to file an expert report from a treating physician . . . if that physician was 'retained or specially employed to provide expert testimony.'" (quoting Fed. R. Civ. P. 26(a)(2)(B))).  Given Defendant's arguments in his Motion to Strike only pertained to Dr. Topp's volunteer and treating-physician statuses only, the Court need not decide whether the report furnished by Dr. Topp meets the requirements of Rule 26(a)(2)(B) and need not decide whether Plaintiffs' erroneous designation of Dr. Topp as a "non-retained" expert should preclude Dr. Topp's expert testimony at this time.

II.    <u>Plaintiffs' Motion for Partial Summary Judgment</u>

"The FTCA authorizes civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission took place." <u>Hannah v. United States</u>, 523 F.3d 597, 601 (5th Cir. 2008) (citing 28 U.S.C. §§ 1346(b)(1), 2674). Because the alleged medical malpractice took place in Texas, Texas law controls Plaintiffs' allegations of medical malpractice against Defendant. 28 U.S.C. § 1346(b)(1).

To establish a claim for medical negligence under Texas law, a plaintiff must show (1) a duty to conform to a certain standard of care; (2) failure to conform to that standard; (3) actual injury; and (4) a reasonably close causal connection between the conduct and the injury. <u>Hood v. Phillips</u>, 554 S.W.2d 160, 165 (Tex. 1977). Plaintiffs seek summary judgment on two elements of their medical negligence cause of action: (1) breach of a certain standard of care, and (2) causation. (MPSJ ¶ 3.) The Court will address each element in turn.

1.    <u>Applicable Standard of Care and Breach</u>

The applicable standard of care is what an ordinarily prudent physician would do under the same or similar circumstances, <u>see</u> <u>Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios</u>, 46 S.W.3d 873, 880 (Tex. 2001), and is a

threshold issue that must be established before determining whether a physician

breached the standard of care to a degree constituting negligence, Quijano v.

United States, 325 F.3d 564, 567 (5th Cir. 2003). "Identifying the standard of care

is critical: Whether a defendant breached his or her duty to a patient cannot be

determined absent specific information about what the defendant should have done

differently." Palacios, 46 S.W.3d at 880.

      As a general rule, "[u]nless the mode or form of treatment is a matter

of common knowledge or is within the experience of the layman," expert

testimony is required to establish the applicable standard of care and to determine

whether it has been breached. Hood, 554 S.W.2d at 165–66; see also Denton Reg'l

Med. Ctr. v. LaCroix, 947 S.W.2d 941, 950 (Tex. App. 1997). "That testimony

must focus on the standard of care in the community in which the treatment took

place or in similar communities." Quijano, 325 F.3d at 568 (citing Birchfield v.

Texarkana Mem'l Hosp., 747 S.W.2d 361, 366 (Tex. 1987); Hall v. Huff, 957

S.W.2d 90, 101 (Tex. App. 1997)).

      Plaintiffs assert that "there is no genuine dispute of the material fact

that it was below the standard of care, or negligent[,] to administer ten times the

standard, recommended dosage of Phenylephrine Hydrochloride to BILLY K.

SPEARS." (MPSJ ¶ 5.)[5]  Both of Plaintiffs' expert witnesses, Dr. Bruce M. Decter and Dr. Raymond F. Topp,[6] opined that Defendant should not have administered 5mg of Phenylephrine Hydrochloride.  (Id., Ex. 1 at 1–5, 19–21.)  Dr. Decter, a clinical cardiologist board-certified in cardiovascular disease and nuclear cardiology, opined: "Later [on December 13th] because of hypotension, [Spears] was given 5mg of IV neosynephrine instead of .5 mg. . . . There is clearly a deviation from the standard of care since Mr. Spears received 10 times the usual dose of neosynephrine."  (Id., Ex. A at 2.)  In a letter to Plaintiffs, Dr. Topp stated:

> During one of the[] resuscitative efforts, . . . Mr. Spears was given an inappropriate dose of medication to increase his blood pressure and this was followed by the administration of another medication to bring his blood pressure down. . . . Please understand that I do not feel that this error was due to any negligence or malpractice performed by any one provider; however, there were flaws in the system that led to this medical error.

(Id., Ex. 1 at 20.)

        In Defendant's Response, Defendant did not adduce any evidence refuting that the 5mg of Phenylephrine Hydrochloride was a breach of the

---

[5] Although Plaintiffs' Complaint alleges four instances where Defendant breached a standard of care, Plaintiffs' Motion for Partial Summary Judgment only relies on 5mg dosage of Phenylephrine Hydrochloride.

[6] Plaintiffs also cite a written letter from Major General M. Ted Wong, Commander of the San Antonio Military Medical Center (see Dkt. # 15 at 4), but did not furnish a copy of said letter as an exhibit to the Motion for Partial Summary Judgment.  As such, the Court will not consider the letter from Major General Wong.

applicable standard of care.  To the contrary, Defendant's expert, Dr. Douglas W.

Jenkins, a board-certified physician in internal medicine and pulmonary disease,

affirmed:

> On one of these occasions [of low blood pressure], an overdose of
> neosynephrine was given and shortly thereafter Mr. Spears died.  The
> BAMC staff, including Dr. Topp[,] who was on the staff at the time of
> Mr. Spears's surgery and death, have acknowledged the overdose and
> the proximity of the overdose to Mr. Spears's death.

(Dkt. # 18, Ex. A (emphasis added).)  At the hearing, Defendant conceded that the

administration of a 5mg dose breached the standard of care.

Accordingly, the Court **GRANTS** Plaintiffs summary judgment on

Defendant's breach of the standard of care.

2.    Causation

In order to show causation, a plaintiff must "adduce evidence of a

'reasonable medical probability' or 'reasonable probability' that [the] injuries were

caused by the negligence" of the defendant, meaning that it is "'more likely than

not' that the ultimate harm or condition resulted from such negligence." Jelinek v.

Casas, 328 S.W.3d 526, 532–33 (Tex. 2010) (quoting Kramer v. Lewisville Mem'l

Hosp., 858 S.W.2d 397, 399–400 (Tex. 1993)); see also Ellis v. United States, 673

F.3d 367, 373 (5th Cir. 2012).

"Expert testimony is necessary to establish causation as to medical

conditions outside the common knowledge and experience of [the finder of fact]."

Ellis, 673 F.3d at 373 (quoting Guevara v. Ferrer, 247 S.W.3d 662, 665 (Tex. 2007)).  The expert testimony must "explain how and why the negligence caused the injury" to a reasonable degree of medical probability.   Jelinek, 328 S.W.3d at 536.

> It is not enough for an expert simply to opine that the defendant's negligence caused [the plaintiff's] injury. . . . [The Supreme Court of Texas has] rejected expert opinions not grounded in a sound evidentiary basis: [I]f no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection.  [A] claim will not stand or fall on the mere ipse dixit of a credentialed witness.  When the only evidence of a vital fact is circumstantial, the expert cannot merely draw possible inferences from the evidence and state that in medical probability the injury was caused by the defendant's negligence.  The expert must explain why the inferences drawn are medically preferable to competing inferences that are equally consistent with the known facts.

Id. (internal quotation marks and citations omitted) (emphasis added).  To be clear, it is insufficient to draw inferences from the evidence and state that "in a medical probability the injury was caused by the defendant's negligence."  Id.

Here, Plaintiffs' experts provide only conclusory opinions about whether that dosage caused Spears's untimely death.  Plaintiffs' expert, Dr. Decter, opined:

> It is also clear that there was significant causality since he died within one hour of the overdose.

> Mr. Spears's baseline functional status as reported in the chart was that he was able to walk 600 ft without dyspnea.  He was somewhat deconditioned after a bout of pneumonia 2 months prior.

24

On the third day post op, Mr. Spears was extubated requiring only a
facemask to maintain normal oxygen saturation.  He was initially
improving post op but had a setback of pneumonia and hypotension
requiring re-intubation and inotropes (medications that support blood
pressure). . . . [H]e was intubated to temporarily treat the respiratory
failure 'while the patient recovers from pneumonia.'  His caring
physicians had little doubt that he would recover from the pneumonia.
Since he survived pneumonia 2 months prior and since the cause of
the pneumonia (a partially digested pill lodged in his right segmental
bronchus) was partially removed, <u>beyond a reasonable degree of
medical certainty had he not received the overdose of neosynephrine,
he would have survived the hospitalization and returned to his
pre-surgical medical baseline</u>.

(Dkt. # 15-1 at 2 (emphases added).)  But Dr. Decter did not explain <u>how</u> or <u>why</u>

the 5mg dosage of Phenylephrine Hydrochloride caused Spears's death.  Rather, he

simply concluded that "there was significant causality since he died within one

hour of the overdose" and "beyond a reasonable degree of medical certainty had he

not received the overdose of neosynephrine, he would have survived the

hospitalization . . . ."  (<u>Id.</u>)  It is insufficient to rely solely on the one-hour timespan

to conclude that the Phenylephrine Hydrochloride caused Spears's death,

especially considering that Spears's was experiencing severe hypotension, was

hemodynamically unstable, and required resuscitation interventions, just prior to

administration of the 5mg of Phenylephrine Hydrochloride.  It is also insufficient

to opine "beyond a reasonable degree of medical certainty had he not received the

overdose of neosynephrine, he would have survived the hospitalization and

returned to his pre-surgical medical baseline" because that is "merely draw[ing]

possible inferences from the evidence and stat[ing] that in medical probability the injury was caused by the defendant's negligence" as prohibited by <u>Jelinek</u>, 328 S.W.3d at 536.  Dr. Decter must show a "reasonable <u>medical</u> probability" that the dosage caused Spears's death.  <u>Id.</u> at 532.  He needs to "explain how and why the negligence caused the injury" to a reasonable degree of medical probability.  <u>Id.</u> at 536.

Likewise, Dr. Topp's report lacks evidentiary support for his claims that the overdose caused Spears's death.  Dr. Topp opined:

> I can also reasonably say that has [sic] a medical error not occurred
> Mr. Spears would be alive today.  I base this assertion on the fact that
> Mr. Spears had comorbitides very similar to anyone in this age group
> and that these comorbidities were being managed very effectively by
> the primary care teams throughout the military medical system and the
> veterans administration.

(Dkt. # 15-1 at 20.)  In effect, Dr. Topp summarily concluded that had the 5mg of Phenylephrine Hydrochloride not been administered, Spears would not have died. This is insufficient to show <u>how</u> the 5mg of Phenylephrine Hydrochloride <u>caused</u> Spears's death.  Dr. Topp does not provide any principled medical or evidentiary basis to support his causation conclusion.  <u>See Jelinek</u>, 328 S.W.3d at 536.

Dr. Topp did, however, discuss how the overdose of Phenylephrine Hydrochloride, followed by the another administration of drugs to counteract the overdose, led to a rapid rise in Spears's blood pressure.  (Dkt. # 15-1 at 20.)  But Dr. Topp merely recited the opinion of another physician: "As it has been

explained to me by the Intensivist working at the San Antonio Military Medical Center at the time, this rapid rise in his blood pressure followed by the rapid fall in his blood pressure within the few minutes led to his death." (Id.)   Since this was not Dr. Topp's conclusion, and Plaintiffs have not furnished any report by the Intensivist, Dr. Topp's passing assertion is insufficient to meet Plaintiff's burden of proving an absence of material fact regarding causation to warrant summary judgment.

The Court is perplexed how Plaintiffs' third expert's testimony demonstrates causation.  Plaintiff's third expert, Carl M. Hubbard, Ph.D, is an economist.  (See Dkt. # 15-1 at 6–18.)  Plaintiffs make clear that their Motion only seeks partial summary judgment, namely on liability and causation, (MPSJ at 3) but Dr. Hubbard's report makes no reference to either issue.  Rather, Dr. Hubbard's report discusses only Plaintiffs' economic losses as a result of Spears's death.  The report is thus irrelevant and premature for the instant Motion.

Because Plaintiffs fail to demonstrate an absence of material fact with regard to causation, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs summary judgment on causation.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Strike Dr. Topp as Plaintiffs' Expert (Dkt. # 18) and **GRANTS IN PART AND**

**DENIES IN PART** Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 15).

The Court **GRANTS** Plaintiffs leave to refile another motion for partial summary

judgment on causation.

       **IT IS SO ORDERED.**

       **DATED:** San Antonio, Texas, January 23, 2014.

_____

David Alan Ezra
Senior United States District Judge
