IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LAVONNE E. SPEARS, individually, | ) | CV NO. 5:13-CV-47-DAE |
| and as representative of the Estate of | ) | |
| BILLY K. SPEARS, deceased, DAVID | ) | |
| J. SPEARS, and BRIAN K. SPEARS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING PLAINTIFFS' SECOND MOTION FOR PARTIAL
SUMMARY JUDGMENT

On July 11, 2014, the Court heard argument on Plaintiffs' Second

Motion for Partial Summary Judgment (Dkt. # 30).  Jeffrey C. Anderson, Esq.,

appeared on behalf of Plaintiffs; James F. Gilligan, Esq., appeared on behalf of

Defendant United States.  For the reasons that follow, the Court **DENIES**

Plaintiffs' Second Motion.

BACKGROUND

On December 6, 2011, Billy K. Spears, an eighty-one-year-old man,

underwent elective spinal surgery at the San Antonio Military Medical Center.

1

("Compl.," Dkt. # 1 ¶ 8.)  During surgery doctors discovered a dural tear at the L1 left nerve root, which required additional attention and repairs.  (Id.)  At the end of surgery, Spears experienced hemodynamic instability, which was successfully treated with administration of blood or blood products.  (Id.)  He was then transferred to the Intensive Care Unit and placed on a ventilator.  (Id.)  Two days later, he was extubated.  (Id.)  On December 10, 2011, he experienced hypotension and tachycardia.  (Id.)

On December 13, he was reintubated as a result of his partial respiratory failure.  (Id.)  Doctors performed a bronchoscopy and removed a gelatinous foreign body, thought to be a pill, in his right segmental bronchus.  (Id.)  During the retrieval, Spears became hemodynamically unstable and required resuscitation interventions.  (Id.)  At approximately 5:30 p.m., Dr. Markov, a surgery resident, verbally directed Michelle K. Head, a registered nurse, to administer 5mg of Phenylephrine Hydrochloride IV[1] to Spears.  (Id.)

Twenty minutes later, Spears suffered a cardio-pulmonary arrest.  (Id.)  Doctors administered Advanced Cardiovascular Life Support ("ACLS") medications.  (Id.)  Spears was pronounced dead at approximately 6:36 p.m.  (Id.)

On January 17, 2013, Plaintiffs Lavonne E. Spears, individually and as representative of the Estate of Billy K. Spears, David J. Spears, and Brian K.

---

[1] Plaintiffs also refer to Phenylephrine Hydrochloride as "neosynephrine."  (See Dkt. # 15-1 at 2.)

Spears (collectively, "Plaintiffs") brought the instant wrongful death action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), alleging medical malpractice by the United States, acting by and through its agents, servants, and/or employees (collectively referred to as "Defendant") at Brooke Army Medical Center.  (Id. ¶¶ 8–15.)  Plaintiffs' Complaint alleges that Defendant negligently provided treatment to Spears during the following acts:

    A.    Administering 5mg of Phenylephrine IV, which was ten times the appropriate dosage for the administration of that drug resulting in cardio-pulmonary arrest;

    B.    Administering oral medication to a patient with a Parkinsonism—like swallowing disorder, whom the healthcare providers knew or should have known was at a high risk of aspiration of such foreign bodies as a result of an abnormal swallowing disorder;

    C.    Performing elective spinal surgery on a patient known to have multiple underlying co-morbid conditions rendering him high risk for operative and post-operative complications; and

    D.    Failing to act as physicians and healthcare providers of ordinary prudence would have acted under the same or similar circumstances.

(Id. ¶ 10.)  Plaintiffs seek damages on their own behalf for pecuniary loss, loss of companionship, mental anguish, loss of income and inheritance, medical and funeral expenses, and on behalf of the Estate of Billy K. Spears for Spears' physical pain and mental anguish between the time of his surgery and his death.  (Id. ¶¶ 12–13.)

On May 30, 2013, Plaintiffs filed the First Motion for Partial Summary Judgment.  (Dkt. # 15.)  On July 2, 2013, Defendant filed a Response to Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 18), and on that same day, Plaintiffs filed a Reply in further support of their Motion for Partial Summary Judgment (Dkt. # 19).  On July 3, 2013, Defendant filed a Motion to Strike Raymond F. Topp, M.D., as Plaintiffs' Testifying Expert, or alternatively, to Strike all Topp's Expert Opinions Regarding Standard of Care, Proximate Cause, and Damages in Plaintiffs' Motion for Partial Summary Judgment and to Prohibit All Anticipated Future Testimony at Future Deposition or Trial.  (Dkt. # 20.)  Defendant asserted that Topp's testimony must be stricken because 32 C.F.R. § 516.49 and Army Regulation 27-40 ¶ 7-10 preclude a former Army physician's expert testimony against the Government.

On January 6, 2013, the Court held a hearing on Plaintiffs' Motion.  At the hearing, Defendant conceded that it breached the standard of care, but argued that fact issues existed with regard to causation.  The Court explained to Plaintiffs that they had not set forth sufficient evidence to demonstrate an absence of material fact with regard to causation.

Sometime after the hearing, but before the Court issued its Order on Plaintiffs' First Motion for Partial Summary Judgment, Plaintiffs filed their Second Motion for Partial Summary Judgment that is now currently before the Court.

4

("2nd MPSJ," Dkt. # 30.)  Plaintiffs attached a revised letter from their expert, Dr.

Decter.  (Id., Ex. A.)

On January 23, 2014, the Court issued its Order on Plaintiffs' First

Motion for Partial Summary Judgment and on Defendant's Motion to Strike.

("Order, Dkt. # 32.)  The Court denied Defendant's Motion to Strike the testimony

of Dr. Topp because the Army Regulations did not supersede the federal rules

governing expert testimony.  (Id. at 7–14.)  The Court's Order granted in part and

denied in part Plaintiff's First Motion for Partial Summary Judgment.  The Court

found that Defendant did breach the requisite standard of care, especially given

Defendant's admission of such at the hearing.  (Id. at 20–23.)  However, the Court

found that Plaintiffs did not adduce sufficient evidence of a "reasonable medical

probability" that the negligence was a substantial factor in Spears' death.  The

Court stressed that "it is insufficient to draw inferences from the evidence and state

that 'in a medical probability the injury was caused by defendant's negligence.'"

(Id. at 24 (quoting Jelinek v. Casas, 328 S.W.3d 526, 536 (Tex. 2010)).)

After the Court issued its Order, Defendant filed a Response to

Plaintiffs' Second Motion for Partial Summary Judgment, arguing that fact issues

with respect to the cause of Spears' death precluded summary judgment.  ("Resp.,"

Dkt. # 34.)  Defendant attached a report by Dr. Jenkins, who had opined that the

overdose was not the substantial cause of Spears' death.  (Id., Ex. A.)  Plaintiffs

filed a Reply and attached a follow-up letter from their testifying expert, Dr. Decter.  ("Reply," Dkt. # 36; id., Ex. A.)

On May 30, 2014, Plaintiffs filed a Supplement to their Second Motion for Partial Summary Judgment.  ("Supp.," Dkt. # 40.)  In their Supplement, Plaintiffs attached articles from PubMed, Drugs.com, Wikipedia, the Journal of the American Heart Association, and the University of Maryland Baltimore Washington Medical Center.  (Id., Exs. A–E.)  On June 12, 2014, Defendant filed a Supplemental Response and Motion to Strike Plaintiffs' Supplementary Exhibits.  ("Resp. Supp.," Dkt. # 41.)

## LEGAL STANDARD

Summary judgment is proper under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012).  The main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Id. at 323  If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial.  ACE Am. Ins. Co. v.

Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).  In

deciding whether a fact issue has been created, "the court must draw all reasonable

inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods.,

Inc., 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions,

improbable inferences, and unsupported speculation are not sufficient to defeat a

motion for summary judgment."  Brown v. City of Hous., 337 F.3d 539, 541 (5th

Cir. 2003).

 "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.'"

Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

(quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

DISCUSSION

I. Defendant's Motion to Strike

 Plaintiffs' Supplementary Exhibits include:

1. Abstract from Drug Saf, 2012 Mar 1 entitled Paradoxical and bidirectional drug effects by Smith SW, Hauben M. Aronson JK

2. FDA prescribing information, side effects and uses regarding Promethazine and Phenylephrine

3. Phenylephrine – Wikipedia encyclopedia

    4.      Article, Mechanisms of Inhibition of Heart Rate by Phenylephrine, Journal of the American Heart Associations, by Sarla Varma, M.B.B.S., M.S., S.D. Johnsen, B.S., D.E. Sherman, B.S., and W.B. Youmans, M.D., Ph.D.

    5.      Phenylephrine, University of Maryland, Baltimore Medical Center Health Library

(Supp. at 1–2; id. Exs. A–E.)  Defendant objects to all five of Plaintiffs' Supplementary Exhibits and moves to strike them because they fail to satisfy procedural and evidentiary requirements under Federal Rule of Civil Procedure 56 and Federal Rules of Evidence 802, 803(18), and 805 and are irrelevant.  (Resp. Supp. at 2.)

    A.    <u>Federal Rule of Civil Procedure 56</u>

        Defendant first argues that Plaintiffs' Supplementary Exhibits are improper under Rule 56(c)(1)(A) because they have no sponsor to properly authenticate or explain what specific statements contained within each is applicable and competent evidence.  (Id. at 2–3.)  That Rule provides:

> A party asserting that a fact cannot be disputed must support the assertion by . . .
>
> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

Fed. R. Civ. P. 56(c)(1)(A).  Courts construing this Rule hold that "[u]nauthenticated documents simply do not constitute proper summary judgment

8

evidence." <u>Hicks v. Brysch</u>, 989 F. Supp. 797, 810 (W.D. Tex. 1997); <u>accord</u> <u>King v. Dogan</u>, 31 F.3d 344, 346 (5th Cir. 1994) (holding that unverified pleadings and unauthenticated documents did not constitute proper summary judgment evidence); <u>see also</u> <u>Duplantis v. Shell Offshore, Inc.</u>, 948 F.2d 187, 191 (5th Cir. 1991) (holding that unauthenticated documents are "not the kind of evidence described in Rules 56(c) and 56(e)").  "To be considered by the court, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence at trial."  <u>United States v. Heerwagen</u>, 993 F.2d 1543 (5th Cir. 1993).  Here, Plaintiffs did not attach an affidavit to their exhibits and as such, none of Plaintiffs' Supplementary Exhibits are authenticated.  Accordingly, they do not fall within the categories of evidence acceptable for this Court's review of Plaintiffs' Second Motion for Partial Summary Judgment.

      **B.**    <u>Federal Rule of Evidence 802 and 803(18)</u>

      Defendant additionally relies on Federal Rule of Evidence 802 to argue that each of Plaintiffs' Supplementary Exhibits are inadmissible hearsay. Defendant is correct that each of the documents contain out-of-court statements used to prove that the overdose of Phenylephrine caused Spears' death.  In fact, many of the documents contain annotations, presumably made by Plaintiffs'

counsel, to highlight the documents references to the effects of Phenylephrine ostensibly to show how the drug caused Spears' death.

Given that the documents are hearsay, the Court next turns to Defendant's second objection, namely that the documents fail to satisfy the learned-treatise exception to the hearsay bar.  See Fed. R. Evid. 803(18).  Rule 803(18) provides that "[a] statement contained in a treatise, periodical, or pamphlet" may be admitted if:

> (A)   the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and
>
> (B)   the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.

Fed. R. Evid. 803(18); accord United States v. Norman, 415 F.3d 466, 473 (5th Cir. 2005) ("Learned treatises are exempt from the hearsay rule to the extent they are used by an expert witness or in cross-examination of an expert witness, if they are established as reliable authority.  The treatise can be established as reliable authority by expert testimony, by admission of an expert being cross-examined, or by judicial notice.").  Here, neither Plaintiffs' nor Defendant's respective experts rely on any of the articles proffered by Plaintiffs in their Supplement.  As such, the only avenue for the documents' admission is through judicial notice.

Courts routinely take judicial notice of basic facts, figures, and methods of calculation in sources such as treatises and almanacs.  United States v. Henry, 417 F.3d 493, 494 (5th Cir. 2005); see also Fed. R. Evid. 201 (courts can take judicial notice of facts that "can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned").  In addressing the treatise exception to the hearsay rule, the Second Circuit stated:

> Learned treatises are considered trustworthy because "they are written primarily for professionals and are subject to scrutiny and exposure for inaccuracy, with the reputation of the writer at stake."  Fed. R. Evid. 803(18) advisory committee note.  Failure, therefore, to lay a foundation as to the authoritative nature of a treatise requires its exclusion from evidence because the court has no basis on which to view it as trustworthy.

Schneider v. Revici, 817 F.2d 987, 991 (2d Cir. 1987); see also Baker v. Barnhart, 457 F.3d 882, 891 (8th Cir. 2006) ("The district court did not identify, and we cannot discern, any indication that the Soderberg article qualifies as a treatise of an authoritative nature.").

Plaintiffs have not provided information about the expertise of the authors or editors and have thus not laid an adequate foundation for this Court to find that any of the five Supplementary Exhibits qualify as authoritative learned treatises.  While one of Plaintiffs' Supplementary Exhibits does appear impressive, namely the "Mechanisms of Inhibition of Heart Rate by Phenylephrine" article by the Journal of the American Heart Associations,

11

Plaintiffs have not tendered any evidence to show that this article is so authoritative that it warrants judicial notice—an exceptionally high bar as it requires that the source's "accuracy cannot reasonably be questioned."  See Fed. R. Evid. 201.  Because the articles do not qualify for the learned-treatise hearsay exception, Plaintiffs' Supplementary Exhibits are inadmissible hearsay and therefore inappropriate for this Court's consideration of Plaintiffs' Second Motion for Partial Summary Judgment.

      C.    <u>Relevance</u>

      Finally, Defendant argues that the Supplementary Exhibits are irrelevant to the issue at hand (i.e., whether the overdose of Phenylephrine <u>caused</u> Spears' death).  Defendant contends that pursuant to Federal Rule of Civil Procedure 56(c)(2), evidence must be admissible (i.e., relevant) in order for it to be considered on a motion for summary judgment.  (Resp. Supp. at 2–3; <u>see</u> also Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").)

      With respect to Exhibit A, an abstract entitled "Paradoxical and Bidirectional Drug Effects," Defendant contends that the abstract only talks generally about multiple drugs, but never specifically discusses Phenylephrine.  (Resp. Supp. at 4.)  Defendant is correct; Exhibit A only speaks in generalities

about "paradoxical drugs" and discusses the effects on such drugs on the human body.  The article does not mention Phenylephrine at all.  As such, the article fails to show that it "has any tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  The article is irrelevant, and therefore improper summary judgment evidence.  See Fed. R. Civ. P. 56(c)(2).

Defendant next argues that Exhibit B, a Drugs.com article on Promethazine and Phenylephrine, is equally irrelevant because the article specifically disclaims any reliability with respect to Phenylephrine's effect on patients over 65 and Spears was 81 when the overdose of Phenylephrine was administered.  (Resp. Supp. at 4–5.)  Again, Defendant is correct that the relevance of Exhibit B is questionable as it states that "clinical studies of promethazine hydrochloride and phenylephrine hydrochloride syrup did not include sufficient numbers of subjects over the age of 65 to determine whether they respond differently from younger subjects."  (Supp., Ex. B. at 9.)  However, what is more telling is that the article does not discuss whether a 5mg dosage of Phenylephrine on a patient similar to Spears would have caused death, which is the relevant inquiry on Plaintiff's Second Motion for Partial Summary Judgment.

Defendant makes a similar objection with respect to Exhibit D, an article entitled "Mechanisms of Inhibition of Heart Rate by Phenylephrine," arguing that it is irrelevant because it discusses how dogs react to Phenylephrine—

13

not humans.  (Resp. Supp. at 5; <u>see also</u> Supp. Ex. D at 5 ("Summary: Studies were performed to determine the effects of phenylephrine in dogs under chloralose as influenced by mechanical buffering of blood pressure . . . .").)  Given that this article lacks discussion on the effects Phenylephrine on humans—much less a patient like Spears—the Court finds this article's relevance dubious and does not qualify for admission in consideration of Plaintiffs' Motion.

In sum, the Court will not consider any of Plaintiffs' Supplementary Exhibits because they are unauthenticated, in violation of Federal Rule of Civil Procedure 56(c)(1).  Similarly, the Court will not consider any of Plaintiffs' Supplementary Exhibits because they are hearsay and fail to satisfy the learned-treatise hearsay exception.  Finally, Exhibits A, B, and D are irrelevant to determining whether the overdose of Phenylephrine caused Spears' death.  Accordingly, the Court will not consider any of Plaintiffs' Supplementary Exhibits when deciding whether to grant their Second Motion for Partial Summary Judgment.

II.    <u>Plaintiffs' Second Motion for Partial Summary Judgment On Causation</u>

As noted in the Court's earlier Order, "[t]he FTCA authorizes civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act

or omission took place." Hannah v. United States, 523 F.3d 597, 601 (5th Cir. 2008) (citing 28 U.S.C. §§ 1346(b)(1), 2674).  Because the alleged medical malpractice took place in Texas, Texas law controls Plaintiffs' allegations of medical malpractice against Defendant.  See 28 U.S.C. § 1346(b)(1).

To establish a claim for medical negligence under Texas law, a plaintiff must show (1) a duty to conform to a certain standard of care; (2) failure to conform to that standard; (3) actual injury; and (4) a reasonably close causal connection between the conduct and the injury.  Hood v. Phillips, 554 S.W.2d 160, 165 (Tex. 1977).  The Court's earlier Order granted Plaintiffs partial summary judgment on the first three elements.  Plaintiffs now seek summary judgment on the fourth element of their medical negligence claim—causation.

The causation element of a negligence claim comprises the two following components: the cause-in-fact component and the foreseeability component.  IHS Cedars Treatment Ctr. of DeSoto, Tex. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).  An act or omission is a cause-in-fact if it is a substantial factor in bringing about the injury, without which the harm would not have occurred.  Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992).  In other words, cause-in-fact requires proof that the "allegedly negligent act or omission constitute[s] a substantial factor in bringing about the injuries, and without it, the harm would not have occurred."  Columbia Med. Ctr. of Las Colinas, Inc. v.

Hogue, 271 S.W.3d 238, 246 (Tex. 2008).  Foreseeability requires that a person of

ordinary intelligence would have anticipated the danger caused by the negligent act

or omission.  Doe v. Boys Clubs of Greater Dall., Inc., 907 S.W.2d 472, 478 (Tex.

1995).

        "Expert testimony is necessary to establish causation as to medical

conditions outside the common knowledge and experience of [the finder of fact]."

Ellis v. United States, 673 F.3d 367, 373 (5th Cir. 2012) (quoting Guevara v.

Ferrer, 247 S.W.3d 662, 665 (Tex. 2007)).  The expert testimony must "explain

how and why the negligence caused the injury" to a reasonable degree of medical

probability.  Jelinek v. Casas, 328 S.W.3d 526, 536 (Tex. 2010).

> When the only evidence of a vital fact is circumstantial, the expert
> cannot merely draw possible inferences from the evidence and state
> that in medical probability the injury was caused by the defendant's
> negligence.  The expert must explain why the inferences drawn are
> medically preferable to competing inferences that are equally
> consistent with the known facts.  Thus, when the facts support several
> possible conclusions, only some of which establish that the
> defendant's negligence caused the plaintiff's injury, the expert must
> explain to the fact finder why those conclusions are superior based on
> verifiable medical evidence, not simply the expert's opinion.

Id. (internal quotation marks and citations omitted) (emphasis added).  To be clear,

when the facts give rise to multiple competing inferences, expert testimony must

use verifiable medical evidence to explain why one cause-in-fact is superior to

another.

In support of their causation argument, Plaintiffs' Second Motion for Partial Summary Judgment includes a one-page revised report from Bruce M. Decter, M.D.  (2nd MPSJ, Ex. A.)  The report recites Spears' medical history, including his post-operative pneumonia and his chronic comorbidities.  (Id.)  After discussing Spears' history, Dr. Decter generally opines that despite the pneumonia and comorbidities, Spears' death was solely caused by the Phenylephrine overdose. (Id.)  In fact, in one-sentence, Dr. Decter states that "it is [his] opinion, based upon a reasonable degree of medical certainty, that the sole and immediate cause of Billy Spears['] death at 1836 on December 13, 2011, was the overdose of Neo-Synephrine hydrochloride."  (Id.)

However, as Defendant correctly points out in its Response, Dr. Decter's opinion lacks the specificity required by Jelinek.  There, the Supreme Court of Texas made clear that "it is not enough for an expert simply to opine that the defendant's negligence caused the plaintiff's injury." Jelinek, 328 S.W.3d at 536.  And yet, that is exactly what Dr. Decter's revised report states.  Dr. Decter needed to do more than "merely draw possible inferences from the evidence and state that 'in a medical probability' the injury was caused by the defendant's negligence."  Id.  He needed to "explain why the inferences drawn are medically preferable to competing inferences that are equally consistent with the known facts."  Id.

17

After Defendant's Response highlighted the deficiencies in Dr.

Decter's revised report, Plaintiffs submitted a "follow-up" letter from Dr. Decter as

an attachment to their Reply Brief.  (Reply, Ex. A.)  In this follow-up letter, Dr.

Decter provided a detailed explanation of his opinion regarding how and why the

5mg dosage of Phenylephrine Hydrochloride caused Spears' death:

> While attempting to remove a foreign body in the right
> segmental bronchus, Mr. Spears became hypotensive requiring
> Phenylephrine.  He received vasopressin, epinephrine, esmolol and
> levophed all to maintain blood pressure. . . .
>
> At 1730 on December 13, 2011, Mr. Spears received the 5 mg
> supra-therapeutic dose of Phenylephrine Hydrochloride.  His mean
> arterial pressure increased to 100 mm Hg and his heart rate increased
> to 156 bpm.  He was given IV Lopressor to control the heart rate.
> Because of agitation and overbreathing, he received Fentanyl with
> minimal improvement.  Phenylephrine was started again as well as
> Precedex for comfort.  With worsening hypotension and bradycardia,
> Phenylephrine was given again with no response and code was
> initiated at 1821. . . .
>
> The overdose of Phenylephrine Hydrochloride set off a cascade
> of events that directly led to his death.  Phenylephrine Hydrochloride
> is a direct alpha agonist which means it stimulates the alpha receptors
> in the body.  An alpha agonist causes arteriolar constriction
> profoundly raising blood pressure and lowers heart rate. . . .
>
> From the record, there is no documented CVP (central venous
> pressure) seen in the chart after the 5mg bolus of Phenylephrine
> Hydrochloride was given.  Nevertheless, what probably occurred was
> that the CVP was dramatically increased from the bolus of
> Phenylephrine Hydrochloride, leading to an enlarged, strained right
> ventricle which in turn lead to stunning of the right ventricular
> myocardium. . . . Precedex was given for comfort, but the effect of the
> Precedex is that it is an alpha blocker, was working in the exact

18

opposite direction on the same receptor as the Phenylephrine
Hydrochloride, which is a direct alpha agonist.

> The medications that were given after the supertherapeutic
> bolus of Phenylephrine Hydrochloride like lopressor and precedex
> exacerbated the hypotension experienced by Mr. Spears as a result of
> the sepsis from the pneumonia. Had the Phenylephrine Hydrochloride
> overdose not occurred, these medications would not have been given.
> The combination of these medications led to profound hypotension
> and bradycardia, which did not respond to normally life saving
> medications. This is how the Phenylephrine Hydrochloride overdose
> directly caused Mr. Spears['] death.

(Id. at 1–2.) In sum, Dr. Decter opined that the overdose of Phenylephrine

necessitated administering precedex to counteract the overdose, which led to

hypotension and bradycardia and ultimately caused Spears' death.

Unlike Dr. Decter's revised report, his follow-up letter—submitted as

an attachment to Plaintiffs' Reply Brief[2]—satisfies Jelinek. The follow-up letter

"explain[s] how and why the negligence caused the injury" and also "explain[s]

why the inferences drawn are medically preferable to competing inferences."

Jelinek, 328 S.W.3d at 536. Therefore, Plaintiffs have met their initial burden of

establishing causation.

Although Plaintiffs have met their initial burden, that does not end the

---

[2] The Court disapproves of Plaintiffs submitting the appropriate evidence for the
first time in their Reply Brief. See Springs Indus., Inc. v. Am. Motorists Ins. Co.,
137 F.R.D. 238, 240 (N.D. Tex. 1991) (holding that a reply brief should "contain
argument, not new supporting materials"). Nevertheless, the Court shall consider
the follow-up letter as evidence.

instant inquiry because Plaintiffs are seeking summary judgment, which requires

an "absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323.

Specifically, Plaintiffs are seeking summary judgment on causation which means

that there must be an absence of a genuine issue of material fact that the overdose

of Phenylephrine was a "substantial factor" in Spears' death.[3]  See IHS Cedars

Treatment Ctr. of DeSoto, Tex., Inc., 143 S.W.3d at 799 ("Cause in fact is

established when the act or omission was a substantial factor in bringing about the

injuries, and without it, the harm would not have occurred.").

      Defendant argues that there are questions of material fact with regard

to whether the overdose was a substantial factor in Spears' death.  See Speegle v.

Crowder, No. 01-95-0118-CV, 1997 WL 69851, at *4 (Tex. App. 1997) ("Once a

movant has produced competent evidence to establish a right to summary

judgment, the burden shifts to the nonmovant to introduce evidence to raise an

issue of fact that would preclude summary judgment." (quoting City of Hous. v.

Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979))).  Defendant's

Response includes a supplemented expert report from Dr. Douglas W. Jenkins,

---

[3] Defendant appears to argue that Plaintiffs must show that the Phenylephrine "was
more likely than not the sole cause-in-fact."  However, Plaintiffs "need not show
that the defendant's negligence was the sole cause" of Spears' injuries, "only that
such negligence was 'a substantial factor in bringing about the harm and without
which the harm would not have occurred.'"  Cooke v. United States, 3:07-CV-
1120-G, 2008 WL 3876035, at *6 (N.D. Tex. Aug. 18, 2008) (quoting Kramer v.
Lewisville Memorial Hosp., 858 S.W.2d 397, 400 (Tex. 1993)).

wherein he offers five other equally plausible causes-in-fact which may have substantially caused Spears' death as opposed to the Phenylephrine overdose. (Resp., Ex. A.)

First, Dr. Jenkins explains that Spears "was known to have several cardiac problems including atrial fibrillation and congestive heart failure," including pulmonary hypertension. (Id. at 1.) Dr. Jenkins clarifies that pulmonary hypertension can also arise as a cardiac problem that creates high blood pressure in the circulation of blood to the lungs, increasing the risk of cardiac arrhythmias—including potentially fatal arrhythmia such as ventricular fibrillation. (Id.)

Moreover, the second cause-in-fact Dr. Jenkins articulates as contributing to Spears' death is a yeast blood stream infection. (Id.) Spears required six units of packed red cells during the prolonged surgery and each one increased his chance of contracting pneumonia. (Id.) According to Dr. Jenkins, the infection could have been the substantial factor of Spears' death. (Id.)

Third, Dr. Jenkins also mentions Spears' swallowing disorder (achalasia) which is exacerbated in the elderly and can result in death as a potential cause-in-fact of Spears' demise. (Id.)

Fourth, Dr. Jenkins mentions that the time between the overdose and Spears' death provided an opportunity to intervene and that normally recovery from such an event can be secured through medical treatment. (Id.) He believes

21

that Spears' inability to recover following the overdose may be more indicative of prior medical complications that led to his death rather than the overdose.  (Id.)  In fact, Dr. Jenkins states that, "It is [more] probable than not that Mr. Spears' death was due to the factors mentioned above including cardiac disease, pneumonia and the effects of infection and that these factors presented a greater contributory factor than did the dose of Neo-synephrine."  (Id. at 2).

Finally, Dr. Jenkins' supplemental medical report also lists the Do Not Resuscitate (DNR) order included in Mr. Spears' file as a contributing factor that led to Spears' death.  (Id.)  Spears' medical condition and advanced age allegedly warranted such an order and Dr. Jenkins claims that it necessarily limited resuscitative efforts of medical staff treating him.  (Id.)

Taking Defendant's evidence in a light most favorable, as the Court is required to do on a motion for summary judgment, Dr. Jenkins' supplemental report on additional potential causes-in-fact creates a genuine issue of material fact that precludes summary judgment because it shows that there were other causes— as opposed to the overdose—that could have constituted the substantial factor that caused his death.  The numerous potential causes articulated by Dr. Jenkins makes it is more difficult for Dr. Decter's assertion that "Mr. Spears would have recovered from the back surgery . . . and would have returned to his preoperative medical baseline if he had not received 10 times the normal dose of

Phenylephrine" to stand as uncontroverted.  This contrary evidence from a medical

expert creates a question of fact as to whether or not the overdose was a substantial

factor in Spears' resulting death.  Because a genuine issue of material fact exists

with respect to the cause of Spears' death, Plaintiffs are not entitled to summary

judgment on causation.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Plaintiffs' Second

Motion for Partial Summary Judgment (Dkt. # 30).

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, July 14, 2014.

_____

David Alan Ezra
Senior United States Distict Judge

23